## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**Monique Richards-Smith**,

           Plaintiff,

   v.

**AstraZeneca Pharmaceuticals, LP**,

           Defendant.

Civil Action No. 8:23-cv-01879-AAQ

### DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "Defendant"), by and through its attorneys, Morgan, Lewis & Bockius LLP, hereby answers the Complaint of Plaintiff Monique Richards-Smith in accordance with the numbered paragraphs thereof as set forth below.

The inclusion of headings in this Answer is only for consistency with the Complaint and is not an admission of the matters set forth in the headings. AstraZeneca does not understand the headings in the Complaint to constitute allegations to which an answer is required. To the extent Plaintiff considers the headings to constitute allegations, AstraZeneca denies them.

### COMPLAINT

1.    Plaintiff Monique Richards-Smith (herein "Plaintiff" or "Ms. Richards-Smith"), brings this action against the Defendant, AstraZeneca Pharmaceuticals, LP (herein "AZ" or "the Defendant"), for discrimination and reprisal in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, ("ADA").

**ANSWER:** Defendant admits only that Plaintiff has brought certain causes of action under the Americans with Disabilities Act of 1990 but denies that it engaged in any in any discrimination, retaliation, or other unlawful conduct.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Ms. Richards-Smith's ADA actions pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331.

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful practices committed by the Defendant described herein arose in the District of Maryland; the Defendant operates facilities located in this District; and the employment documents and records relevant to the prohibited practices are, upon information and belief, maintained and administered at the Defendant's offices located in this District.

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

## PARTIES

4.      Ms. Richards-Smith is a resident of the state of Maryland. At all times relevant to this Complaint, Ms. Richards-Smith resided in Maryland. From August 2016 to March 2020, Ms. Richards-Smith served as the Defendant's employee. At the time of Ms. Richards-Smith's separation from AZ, her position title was Labeling Strategy Associate Director at the Defendant's facility in Gaithersburg, Maryland.

**ANSWER:**   Defendant admits only that its records reflect that Plaintiff resided in Maryland during her employment with Defendant, that Plaintiff was employed with Defendant from on or about August 2016 to on or about March 2020, and that at the time of her separation from employment, Plaintiff was employed as Associate Director of Labeling based at Defendant's facility in Gaithersburg, Maryland.   Defendant lacks knowledge or information

sufficient to form a belief as to Plaintiff's current state of residence.  Defendant denies any remaining allegations in this Paragraph.

5.      At all times relevant to this Complaint, Ms. Richards-Smith was an "employee" of the Defendant within the meaning of the ADA, 42 U.S.C. § 12111(4).

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

6.      Defendant, AZ, is a Maryland corporation conducting business in Montgomery County, Maryland. Upon information and belief, the Defendant employs over 500 employees.

**ANSWER:**   Defendants admits only that it conducts certain business in Montgomery, County Maryland and that it employs over 500 employees.  Defendant denies the remaining allegations in this Paragraph.

7.      At all times relevant to this Complaint, the Defendant was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5)(A).

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

## ADMINISTRATIVE EXHAUSTION

8.      Ms. Richards-Smith filed a Charge of Discrimination (EEOC Charge No. 12G-202000025) with the Montgomery County Office of Human Rights which was cross-filed with the Equal Employment Opportunity Commission's Philadelphia District Office on June 24, 2020, alleging that the Defendant unlawfully harassed and discriminated against her after she requested a reasonable accommodation and because of her disability. Furthermore, Ms. Richards-Smith alleged that the Defendant retaliated against her after she engaged in protected activity by placing her on a meritless PIP and then terminating her.

**ANSWER:**  Defendant admits only that Plaintiff filed a Charge of Discrimination against AstraZeneca with the Montgomery County Office of Human Rights and the Equal Employment Opportunity Commission in or about June 2020. The remaining allegations in this Paragraph purport to characterize a written document that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

9.     Ms. Richards-Smith received a Notice of Right to Sue from the Commission on April 14, 2023.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

## FACTS

10.     On or about August 15, 2016, Ms. Richards-Smith began work for AZ, as a Manager of Labeling Strategy.

**ANSWER:**  Admitted.

11.     As a Manager of Labeling Strategy, she was responsible for leading labeling teams and authoring labels based on input from experts on the team, collecting data and managing the development and maintenance of labels.

**ANSWER:**  Admitted.

12.     Kathryn Bradley, Director of Therapy Area Labeling, was Ms. Richards-Smith's supervisor from the start of her employment until about May 2018.

**ANSWER:**     Defendant admits only that Ms. Bradley, Director of Therapy Area Labeling, was Plaintiff's supervisor from the start of Plaintiff's employment through on or about July 26, 2018.  Defendant denies the remaining allegations in this Paragraph.

13.     In or around December 2016, Ms. Bradley rated Ms. Richards-Smith a two (2) out of five (5) on her annual performance review. Ms. Bradley informed Ms. Richards-Smith that the rating was due to Ms. Bradley's short tenure and being new in the role.

**ANSWER:**   Admitted, except to the extent this Paragraph purports to characterize a written document that speaks for itself, Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

14.     In March 2018, Ms. Bradley rated Ms. Richards-Smith a four point one (4.1) out of five (5) on her 2017 Performance Evaluation. As a result, Ms. Richards-Smith received a significant bonus.

**ANSWER:**  Defendant admits only that Ms. Bradley gave Plaintiff a 4 out of 5 on her 2017 End of Year Review, and that this rating affected Plaintiff's bonus.   To the extent this Paragraph purports to characterize a written document that speaks for itself, Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.  Defendant denies any remaining allegations in this Paragraph.

15.     On or about April 1, 2018, Ms. Bradley promoted Ms. Richards-Smith to Associate Director of Global Labeling Strategy. As a result, Ms. Richards-Smith received a significant yearly salary increase.

**ANSWER:**  Defendant admits that it promoted Plaintiff to Associate Director of Global Labeling Strategy in or about April 1, 2018, and that Plaintiff received a salary increase as a result.  Defendant denies any remaining allegations in this Paragraph.

16.     Ms. Richards-Smith [sic] line-manager was Jamie Fava, Labeling Strategy Director, from July 2018 to December 2018.

**ANSWER:**   Defendant admits only that Ms. Fava, Labeling Strategy Director, was Plaintiff's line-manager from on or about July 27, 2018 to on or about January 4, 2019. Defendant denies any remaining allegations in this Paragraph.

17.     In or around July 2018, Ms. Richards-Smith began to suffer from depression and anxiety for which she sought medical attention and was prescribed medication.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and on that basis, denies the allegations in this Paragraph.

18.     Ms. Richards-Smith's depression and anxiety prevented her from being able to sleep, eat, concentrate, communicate and work.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

19.     In or around September 2018, Ms. Richards-Smith informed Ms. Fava that she suffered from major depressive disorder and requested an accommodation.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

20.     As an accommodation for Ms. Richards-Smith's disability, Dr. Sridevi Bellamkonda, her medical provider, recommended that she telework as needed.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

21.     In or around October 18, 2018, Ms. Richards-Smith submitted certification paperwork to receive authorization to take intermittent leave pursuant to the Family Medical Leave Act (herein "FMLA"). The duration of the request for an accommodation was through March 2019 when a reassessment would be conducted.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.  To the extent this Paragraph purports to characterize a written document that speaks for itself, Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

22.     In or around December 2018, in response to her request for a reasonable accommodation, AZ[1] provided Ms. Richards-Smith with intermittent leave pursuant to FMLA. AZ also allowed Ms. Richards-Smith to telework up to twice a week.[2]

**ANSWER:**   Defendant admits only that Plaintiff was granted intermittent FMLA leave in or about December 2018 and permitted her to work from home two out of five days per week. Defendant further admits the allegations in footnote 1 but denies the allegations in footnote 2 and otherwise denies the remaining allegations in this Paragraph.

23.     Ms. Richards-Smith utilized the FMLA intermittent leave to alleviate the symptoms of her disability.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

24.     On many occasions, when Ms. Richards-Smith used her approved leave, Ms. Fava would harass her by questioning her work schedule and inquiring about non-existent deadlines. Ms. Fava questioned why she didn't take the medical leave all at once and other similar comments Ms. Richards-Smith believed were made to deter her from using her accommodations.

**ANSWER:**   Denied.

---

[1] AZ uses a third party, The Hartford, to facilitate and provide benefits, such as short- and long-term disability, to its employees.

[2] It was standard policy to allow employees in the Global Labeling Strategy group to telework two days a week and should therefore not be considered an accommodation.

25.     Ms. Fava's comments regarding Ms. Richards-Smith' use of accommodations caused her stress and anxiety and made her feel uneasy when she needed to take leave.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

26.     In late December 2018, Ms. Richards-Smith informed Kim Barrow, Senior Employment Practices Partner, in Human Resources, of Ms. Fava's harassment and that she (Ms. Richards-Smith) felt she (Ms. Fava) was discriminating against her.

**ANSWER:**   Defendant admits only that in late December 2018, Plaintiff made a certain complaint to Kim Barrow, Senior Employment Practices Partner in Human Resources, about Jamie Fava.  Defendant denies the remaining allegations in this Paragraph.

27.     Upon information and belief, Ms. Barrow informed Ms. Fava and Sara Ellmark, Global Head of Labeling, of Ms. Richards-Smith's discrimination and harassment complaints shortly after she made them.

**ANSWER:**  Denied.

28.     In or around January 2019, Ms. Ellmark became Ms. Richards-Smith's direct supervisor.

**ANSWER:**  Admitted.

29.     Around that same time, Mr. Richards-Smith informed Ms. Ellmark of her pregnancy.

**ANSWER:**  Denied.

30.     In or around February 2019, Ms. Richards-Smith announced her pregnancy to the Global Labeling Group during a staff meeting.

**ANSWER:**  Admitted.

31.     In or around March 2019, just a few months after engaging in protected activity, Ms. Ellmark gave Ms. Richards-Smith a two (2) on her 2018 Performance Evaluation. This resulted in a reduced bonus award.

**ANSWER:**  Defendant admits only that Plaintiff received a rating of 2 on her 2018 End of Year Review from Ms. Ellmark, which affected her bonus.  To the extent this Paragraph purports to characterize a written document that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document. The allegation regarding "protected activity" is a legal conclusion to which no response is required.  Defendant denies any remaining allegations in this Paragraph.

32.     Ms. Richards-Smith's 2018 Performance Evaluation was completed by Ms. Fava prior to her termination from AZ.

**ANSWER:**  Denied.

33.     Upon information and belief, Ms. Fava was responsible for Ms. Richards-Smith's rating for her 2018 Performance Evaluation.

**ANSWER:**  Denied.

34.     On or about March 14, 2019, Ms. Richards-Smith sent Ms. Barrow an email to appeal the rating and asserted that Ms. Fava discriminated against her.

**ANSWER:**  Defendant admits only that this Paragraph purports to characterize a written document that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

35.     On or about March 21, 2019, Ms. Richards-Smith met with Human Resources to discuss her yearly Performance Evaluation as she thought she had been unfairly rated by Ms. Fava and Ms. Ellmark.

**ANSWER:** Defendant admits only that Plaintiff met with Human Resources on or about March 21, 2019 to discuss her 2018 End of Year Review. Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff believed and on that basis denies those allegations in this Paragraph.

36. Specifically, Ms. Richards-Smith asserted that her evaluation was fraught with inaccuracies, and she believed that rating was given due to discrimination.

**ANSWER:** Defendant admits only that Plaintiff alleged that her 2018 End of Year Review rating of 2 was discriminatory based on her alleged disability. Defendant denies the remaining allegations in this Paragraph.

37. In the 2018 Performance Evaluation, the following comment was included "we would like to see Monique focus on her *office presence* to grow as a visible leader within our Gaithersburg team" (emphasis added).

**ANSWER:** Defendant admits only that this Paragraph purports to characterize a written document that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

38. Both Ms. Ellmark and Ms. Fava were aware of Ms. Richards-Smith's disability accommodations (telework and intermittent leave) and thus, the comment in her performance evaluation was directly related to her use of both accommodations.

**ANSWER:** Denied.

39. Upon information and belief, Rowell Medina, Associate Director of Labeling Strategy received a higher rating for his 2018 Performance Evaluation than Ms. Richards-Smith even though he had received complaints about his communication skills and his lack of attention to detail.

**ANSWER:** Defendant admits only that Rowell Medina, Associate Director of Labeling Strategy, received a higher rating than Plaintiff on his 2018 End of Year Review. Defendant denies the remaining allegations in this Paragraph.

40.     On or about March 25, 2019, Dr. Bellamkonda once again completed the Certification of Health Care Provider Employee's Serious Health Condition for Ms. Richards-Smith to renew her request for a reasonable accommodation for her disability. As an accommodation, Dr. Bellamkonda recommended that Ms. Richards-Smith telework as needed. The Certification was valid until October 1, 2019.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph. To the extent this Paragraph purports to characterize a written document that speaks for itself, Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

41.     On or about May 2, 2019, Ms. Barrow informed Ms. Richards-Smith, via email, that she had investigated her discrimination complaint and did not find any evidence of it. Ms. Ellmark was copied on the email.

**ANSWER:** Defendant admits only that this Paragraph purports to characterize a written document that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

42.     On or about May 30, 2019, Ms. Ellmark placed Ms. Richards-Smith on a Performance Improvement Plan (herein "PIP").

**ANSWER:** Admitted.

43.     Ms. Ellmark informed Ms. Richards-Smith that she (Ms. Ellmark) had made the decision to place her (Ms. Richards-Smith) on a PIP with the advice of Ms. Barrow.

**ANSWER:**  Admitted.

44.     On or about May 31, 2019, Ms. Richards-Smith told Ms. Ellmark and Ms. Barrow that she would appeal the PIP because it did not accurately depict her work performance.

**ANSWER:**  Admitted.

45.     On or about June 7, 2019, Ms. Richards-Smith sought medical attention from Julie A. Dagenhart, MSN, PMHNP-BC, as the symptoms of her disability had flared. Specifically, Ms. Richards-Smith' [sic] sleeplessness increased, and she lost the ability to concentrate or focus. She was also unable to wake when she managed to sleep. Dagenhart determined that Ms. Richards-Smith' [sic] daily life activities were compromised and recommended that Ms. Richards-Smith take medical leave.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

46.     On or about June 18 and 25, 2019, Ms. Richards-Smith provided an Attending Physician's Statement in support of her medical leave request to The Hartford.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.  To the extent this Paragraph purports to characterize a written document that speaks for itself, Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

47.     In or around mid-June 2019, Ms. Richards-Smith took medical leave (short-term disability). As a result, Ms. Ellmark suspended the PIP during her leave.

**ANSWER:**    Defendant admits only that Plaintiff took medical leave related to her pregnancy starting in or about June 2019 and that it suspended Plaintiff's PIP during her leave. Defendant denies any remaining allegations in this Paragraph.

48.    On or about July 9, 2019, the Hartford informed Ms. Richards-Smith that her request for short-term disability had been denied.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

49.    On or about July 25, 2019, Ms. Richards-Smith appealed the denial of the short-term disability benefits.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

50.    On or about August 11, 2019, Ms. Richards-Smith gave birth to her child.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

51.    On or about September 17, 2019, the Hartford informed Ms. Richards-Smith that her STD benefits were denied, despite her appeal and that her request for maternity leave was under review.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

52.    On or about September 20, 2019, Maria Tyiska, Human Resources Solutions Partner, informed Ms. Richards-Smith that she and Ingrid Bostic, Leave of Absence Advisor, were investigating her maternity leave status.

**ANSWER:**  Denied.

53.     On or about September 30, 2019, Ms. Bostic informed Ms. Richards-Smith that due to her denial of STD, she would not receive any paid family bonding leave as she had already been paid for leave even though her STD was denied. During the same conversation, Ms. Richards-Smith inquired whether she could telework.

**ANSWER:**  Defendant admits only that this Paragraph purports to characterize a written email that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written email.

54.     On or about October 9, 2019, Ms. Tyiska informed Ms. Richards-Smith that she spoke with Ms. Ellmark and Ms. Barrow and confirmed that two days of remote work was the standard within the Global Labeling Group and that anything over that would require the Hartford approval. Ms. Tyiska also informed Ms. Richards-Smith that her PIP would be updated and reinstated when she returned to work.

**ANSWER:**  Defendant admits only that at a certain point Ms. Tyiska informed Plaintiff that her PIP would be updated and reinstated when she returned to work.  Defendant denies the remaining allegations in this Paragraph.

55.     On or about November 10, 2019, Ms. Richards-Smith requested an extension of her maternity leave through December 20, 2019, via the Hartford.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

56.     On or about December 23, 2019[3], Ms. Richards-Smith returned to work.

---

[3]Ms. Richards-Smith took December 24, 2019, off as it was a floating holiday. The remaining days in and the remaining days in 2019 were non-working days.

**ANSWER:**  Defendant admits only that Plaintiff returned to work on or about December 23, 2019, and that Plaintiff was absent from work on December 24, 2019.  Defendant denies the remaining allegations in Paragraph 56 and footnote 3.

57.    On or about January 14, 2020, about two weeks after her return to work, Ms. Richards-Smith met with Ms. Ellmark and Ms. Barrow. During the meeting, they informed Ms. Richards-Smith that she could either leave her employment at AZ or be placed on a PIP. Rather than be terminated, Ms. Richards-Smith selected to be placed on the PIP.

**ANSWER:**  Defendant admits only that on January 14, 2020, Ms. Ellmark and Ms. Barrow informed Plaintiff that she could either accept a mutual separation package or continue on the PIP, and that Plaintiff selected to continue on the PIP.  Defendant denies the remaining allegations in this Paragraph.

58.    On or about January 14, 2020, Ms. Ellmark reinstated the PIP even though it was obvious she preferred to terminate Ms. Richards-Smith.

**ANSWER:**  Defendant admits only that Ms. Ellmark reinstated the PIP on or about January 14, 2020.  Defendant denies the remaining allegations in this Paragraph.

59.    On or about February 5, 2020, Ms. Richards-Smith was taken to the emergency room because she felt very ill.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

60.    On or about February 6, 2020, Ms. Richards-Smith informed Ms. Ellmark that she had been taken to the hospital via ambulance the previous evening as she felt sick and that she would be unable to work on that day (6th) and the next (7th).

**ANSWER:** Defendant admits only that this Paragraph purports to characterize a written email that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written email. Defendant denies the remaining allegations in Paragraph 60.

61.     On or about February 6, 2020, Ms. Richards-Smith submitted a request for STD.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the allegations in this Paragraph and, on that basis, denies the allegations in this Paragraph.

62.     On or about February 18, 2020, Ms. Richards-Smith returned to work.

**ANSWER:** Denied.

63.     On or about March 11, 2020, while Ms. Richards-Smith was out on sick leave, Ms. Ellmark terminated Ms. Richards-Smith via email and through Ms. Barrow, citing failure to meet PIP expectations.

**ANSWER:** Defendant admits only that it terminated Plaintiff's employment on March 11, 2020 via email after Plaintiff failed to attend a scheduled meeting the day before. To the extent this this Paragraph purports to characterize a written document that speaks for itself, Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

64.     Shortly thereafter, on or around about June 2020, Ms. Richards-Smith filed a discrimination and retaliation complaint with the Montgomery County Office of Human Rights which was cross-filed with the EEOC.

**ANSWER:** Defendant admits only that Plaintiff filed a Charge of Discrimination against AstraZeneca with the Montgomery County Office of Human Rights and the Equal Employment Opportunity Commission in or about June 2020. The remaining allegations in this Paragraph

purport to characterize a written document that speaks for itself, and Defendant denies those allegations to the extent they mischaracterize and/or do not fully represent the written document.

## STATEMENT OF CLAIMS

### COUNT I

**Violation of the Americans with Disabilities Act ("ADA"), as amended**
**42 U.S.C. § 12101 et seq.**
**Disability Discrimination**

65.     Ms. Richards-Smith re-alleges paragraphs 1-64 and incorporates them fully herein.

**ANSWER:**  Defendant incorporates by reference the responses to the allegations set forth in the paragraphs above as if fully set forth herein.

66.     The Defendant employed Ms. Richards-Smith for the purposes of the ADA.

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

67.     Ms. Richards-Smith, at all times relevant to this complaint, was disabled under 42 U.S.C. § 12102(1)A), for reasons set forth above.

**ANSWER:**  The allegations in this Paragraph are conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in this Paragraph.

68.     Ms. Richards-Smith's disability substantially limited her in major life activities including, but not limited to, ability to sleep/stay awake, concentrate, and other self-care such as personal grooming (i.e., brushing teeth, hair, showering).

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.   To the extent a response is required, Defendant denies the allegations in this Paragraph.

69.    Ms. Richards-Smith informed her supervisors and other management officials at AZ of her disability and they observed how her disability limited her ability to perform daily life activities.

**ANSWER:**  Denied.

70.    Ms. Richards-Smith's supervisors and other management officials at AZ were aware of her request for accommodations.

**ANSWER:**  Denied.

71.    At all times relevant to this complaint, AZ provided Ms. Richards-Smith with accommodations for her disability. Curiously, however, rather than grant her straight telework as her physician recommended, AZ developed a work-around or used FMLA to facilitate her accommodation.

**ANSWER:**   Defendant admits only that it provided Plaintiff with certain accommodations.  Defendant denies the remaining allegations in this Paragraph.

72.    Ms. Richards-Smith' supervisor, Ms. Fava penalized her for taking leave pursuant to her accommodation. Specifically, Ms. Fava often commented when Ms. Richards-Smith used her accommodation for her disability and when she rated her unfairly in her 2018 Performance Evaluation, citing Ms. Richards-Smith's lack of presence and visibility as an area for improvement.

**ANSWER:**  Denied.

73.     The Americans with Disabilities Act states that it is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to any term, condition or privilege of employment. 29 C.F.R. § 1630.4(a). Pursuant to the ADA Amendments Act of 2008, "disability" is defined as: (1) a physical or mental impairment that substantially limits a major life activity; or (2) a record of a physical or mental impairment that substantially limited a major life activity; or (3) being regarded as having such impairment. 42 U.S.C. § 121002(2). Under the Americans with Disabilities Act, an employer is required to make reasonable accommodation to the known physical or mental limitations of an "otherwise qualified" employee with a disability, unless the accommodation would impose an undue hardship. 29 C.F.R. § 1630.9. The term "qualified" means that "the individual satisfies the requisite skill, experience, education and other job requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. §1630.2(m).

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

74.     At all times pertinent to this complaint, Defendant was an employer subject to the provisions of Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq*.

**ANSWER:**   The allegations in this Paragraph are conclusions of law to which no response is required.

75.     At all times pertinent to this complaint, Plaintiff was entitled to protection under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*

**ANSWER:** The allegations in this Paragraph are conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in this Paragraph.

76.     At all times relevant to this complaint, Plaintiff was an individual with a physical disability and was otherwise qualified for the receiving supervisor position and capable of performing the essential functions of the position. In violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., Defendant knowingly and intentionally discriminated against Plaintiff because of her disability when Defendant, through Ms. Fava, rated Ms. Richards-Smith's work performance lower than what was merited. Thus, Defendant violated the Americans with Disabilities Act.

**ANSWER:** The allegations in this Paragraph are conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in this Paragraph.

77.     As a direct and proximate result of the Defendant's discriminatory conduct and behavior, Ms. Richards-Smith suffered loss and damages.

**ANSWER:** Denied.

78.     As a consequence of the Defendant's actions, Ms. Richards-Smith suffered considerable injury, including loss of earnings, other benefits, and mental distress as herein alleged.

**ANSWER:** Denied.

79.     As a consequence of the Defendant's actions, the Defendant is liable to Ms. Richards-Smith for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

**ANSWER:**  Denied.

## COUNT II

**Retaliation in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12203.**

80.    Ms. Richards-Smith re-alleges paragraphs 1-79 and incorporates them fully herein.

**ANSWER:**  Defendant incorporates by reference the responses to the allegations set forth in the paragraphs above as if fully set forth herein.

81.    The Defendant employed Ms. Richards-Smith for the purposes of the ADA.

**ANSWER:**  The allegations in this Paragraph are conclusions of law to which no response is required.

82.    At all times relevant to this complaint, Ms. Richards-Smith was disabled under 42 U.S.C. § 12102(1)A), for reasons set forth above.

**ANSWER:**  The allegations in this Paragraph are conclusions of law to which no response is required.  To the extent a response is required, Defendant denies the allegations in this Paragraph.

83.    Ms. Richards-Smith's disability substantially limited her in major life activities including, but not limited to, the ability to sleep/stay awake, concentrate, work, and other self-care such as personal grooming (i.e., brushing teeth, hair, showering).

**ANSWER:**  The allegations in this Paragraph are conclusions of law to which no response is required.  To the extent a response is required, Defendant denies the allegations in this Paragraph.

84.     Ms. Richards-Smith informed her supervisors and other management officials at AZ of her disability during her tenure at AZ, prior to receiving a Performance Improvement Plan.

**ANSWER:** Denied.

85.     In March 2019, Ms. Richards-Smith engaged in protected activity, when she informed Ms. Barrow that she believed that management had targeted her for disparate treatment.

**ANSWER:** The allegations in this Paragraph are conclusions of law to which no response is required.  To the extent a response is required, Defendant denies the allegations in this Paragraph.

86.     In May 2019, management placed Ms. Richards-Smith on a PIP.

**ANSWER:** Admitted.

87.     In January 2020, after her return from STD and her absence due to the birth of her child, Ms. Richards-Smith's May 2019 PIP was reinstated, although AZ had attempted to terminate her in January 2020.

**ANSWER:** Defendant admits only that it reinstated Plaintiff's PIP in January 2020 following her return from medical leave.  Defendant denies the remaining allegations in this Paragraph.

88.     In March 2020, AZ terminated Ms. Richards-Smith.

**ANSWER:** Admitted.

89.     The proximity of Ms. Richards-Smith's protected activities and her termination by the Defendant, shows that a causal connection can be established to prove retaliation.

**ANSWER:** Denied.

90.     As a direct and proximate result of the Defendant's retaliatory conduct and behavior, Ms. Richards-Smith suffered loss and damages.

**ANSWER:**  Denied.

91.     As a consequence of the Defendant's actions, Ms. Richards-Smith suffered considerable injury, including loss of earnings and other benefits and mental distress as herein alleged.

**ANSWER:**  Denied.

92.     As a consequence of the Defendant's actions, the Defendant is liable to Ms. Richards-Smith for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

**ANSWER:**  Denied.

WHEREFORE, Plaintiff Monique Richards-Smith prays for judgment against Defendant AZ, for equitable relief, back pay, compensatory damages, consequential damages, punitive and/or liquidated damages, together with prejudgment interest, and for costs and attorney's fees, and for such other and further relief as may be just and equitable.

**ANSWER:**    Defendant denies that Plaintiff is entitled to any of the relief set forth in the WHEREFORE clause and any relief whatsoever.

## GENERAL DENIAL

Defendant denies each and every allegation in the Complaint that is not expressly admitted in this Answer.

## AFFIRMATIVE AND OTHER DEFENSES

AstraZeneca asserts the following defenses without conceding that AstraZeneca bears the burden of proof as to any of them.  AstraZeneca reserves the right to assert such additional defenses that may appear and prove applicable during the course of this litigation.

1.      Plaintiff's Complaint, in whole or in part, fails to state facts sufficient to state a claim upon which relief may be granted.

2.      Plaintiff's claims, in whole or in part, are barred by the applicable statutes of limitations.

3.      Plaintiff's claims are barred to the extent that Plaintiff failed to exhaust internal and/or administrative remedies.

4.      Plaintiff's claims, in whole or in part, are barred by the doctrine of estoppel.

5.      Plaintiff's claims, in whole or in part, are barred because such claims have been waived, discharged, and/or abandoned.

6.      Plaintiff's claims, in whole or in part, are barred by the doctrine of laches.

7.      Plaintiff's claims, in whole or in part, are barred by unclean hands and/or inequitable or wrongful conduct.

8.      Each and every action taken by Defendant with regard to Plaintiff's employment was based upon legitimate, non-discriminatory, non-retaliatory reasons.

9.      Plaintiff is not entitled, on the law or the facts, to any of the damages claimed.

10.     Damages sustained by Plaintiff, the existence of which are denied, were solely and proximately caused by Plaintiff's own negligent, reckless, or intentional conduct.

11.     To the extent that Plaintiff received any income from other employment or any other sources, such monies must be offset against any damages allegedly due to Plaintiff from Defendant, the existence of which are denied.

12.     Plaintiff's claims for damages, in whole or in part, are barred to the extent they failed to mitigate or minimize those damages, the existence of which are denied.

13.     Plaintiff's claims for damages are barred to the extent that they exceed the

amounts recoverable, if any, by applicable law.

14.     Plaintiff's claims fail because any actions of Defendant were at all times taken in compliance with and/or as required by the laws of the United States and/or of the states which regulate Defendant, and taken in good faith and with reasonable grounds for believing that any alleged acts and omissions were not in violation of the law.

15.     To the extent any of Defendant's alleged actions or omissions were unlawful, which Defendant expressly denies, no such actions or omissions constitute a willful violation, but rather were done in good faith, based on a reasonable belief that any such actions or omissions was in conformity with the law, and in reliance on the law

16.     If any improper or illegal acts were taken by any employee of Defendant, which is denied, it was outside the course and scope of that employee's employment, contrary to Defendant's policies, and was not ratified, confirmed, or approved by Defendant.  Thus, any such actions were independent, intervening, and unforeseeable acts that cannot be attributed or imputed to Defendant.

17.     If any damages have been sustained by Plaintiff, although such is not admitted hereby or herein and is specifically denied, Defendant is entitled under the equitable doctrine of setoff and recoupment to offset all obligations of the Plaintiff owed to Defendant against any judgment that may be entered against Defendant.

18.     Plaintiff's claims may be barred, in whole or in part, by the after-acquired evidence doctrine.

19.     Plaintiff's claims are barred because the termination of Plaintiff's employment was not causally connected to any protected activity.

20.     Any claims for punitive damages are inappropriate because all actions regarding

Plaintiff were taken in good-faith efforts to comply with all applicable statutes and laws and for legitimate reasons, Defendant did not act with an improper motive or reckless disregard of Plaintiff's protected rights, and/or Plaintiff cannot prove a willful violation. Further, an award of punitive damages would be an unconstitutional denial of Defendant's rights to due process and/or equal protection under the Fifth and Fourteenth Amendments.

Defendant reserves the right to assert such other and additional defenses that may appear and prove applicable during the course of this litigation.

**WHEREFORE**, Defendant, having fully answered Plaintiff's Complaint, respectfully requests the Court enter judgment in its favor and against Plaintiff or, alternatively, dismiss Plaintiff's claims with prejudice, and award Defendant its costs herein, including reasonable attorney's fees.

Dated: December 18, 2023

Respectfully submitted,

*/s/ Lincoln O. Bisbee*

Lincoln O. Bisbee (Bar. No. 28953)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
lincoln.bisbee@morganlewis.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2023, I electronically filed a copy of the foregoing

through the Court's CM/ECF system, which will send notification of such filing to all counsel of

record.

*/s/ Lincoln O. Bisbee*