**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MONIQUE RICHARDS SMITH,
*Plaintiff*,

v.

ASTRAZENECA PHARMACEUTICALS LP.,
*Defendant*.

Case No. 23-cv-1879-ABA

**MEMORANDUM OPINION**

Plaintiff Monique Richards Smith sued her former employer, Defendant AstraZeneca Pharmaceuticals, LP ("AstraZeneca"), asserting claims of discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). The Court previously granted Defendant's motion for summary judgment. *Richards Smith v. AstraZeneca Pharms. LP*, Case No. 23-cv-1879-ABA, 2026 WL 741599 (D. Md. Mar. 17, 2026). Ms. Richards Smith has filed a motion to alter or amend the judgment, and AstraZeneca has filed a response in opposition. For the reasons that follow, Ms. Richards Smith's motion will be denied.

## I. BACKGROUND[1]

Ms. Richards Smith began working at AstraZeneca in 2016 and was initially supervised by Katheryn Bradley until around May 2018. ECF No. 1 ¶ 10; ECF No. 11 ¶ 10; ECF No. 57-3, Richards Smith Dep. 129:19–130:11. During 2018, Ms. Richards Smith was supervised by Ms. Bradley, Jonathan Griffiths, and Jamie Fava for a few

[1] The Court recounted the factual background of this case in detail in its prior opinion. *See Richards Smith*, 2026 WL 741599, at *1–5. The Court will recount only the facts most relevant to Ms. Richards Smith's limited motion to alter or amend judgment.

months each. ECF No. 57-3, Richards Smith Dep. 129:19–130:11, 132:18–133:13; ECF No. 1 ¶ 16; ECF No. 11 ¶ 16. In 2019, Sara Ellmark became Ms. Richards Smith's supervisor. ECF No. 57-3, Richards Smith Dep. 133:18–134:4. In or around January 2019, Ms. Richards Smith informed Ms. Ellmark that she was pregnant and they discussed Ms. Richards Smith's leave for after the birth of her child. *Id.* 400:14–20, 401:3–401:17.

In or around March 2019, during Ms. Richards Smith's 2018 annual performance evaluation, she was rated a 2 out of 5, which resulted in a reduced bonus award. *Id.* 150:14–16, 199:22–200:3; ECF No. 57-8. Ms. Richards Smith's 2018 performance evaluation included comments from Ms. Bradley, Mr. Griffiths, and Ms. Fava. ECF No. 57-8 at 2–3. Several were complimentary but several expressed concerns about Ms. Richards Smith's performance, including concerns about her attention to detail and document quality, failure to smoothly transition the responsibilities of her first position to her successor, communication skills, and more. *Id.* Shortly after receiving this performance evaluation, Ms. Richards Smith sent an email to Kim Barrow, the Senior Employment Practices Manager in Human Resources at AstraZeneca, and Michelle Monti, another member of the Human Resources team at AstraZeneca, appealing her 2018 performance evaluation, stating that she believed that she had been unfairly penalized for performance issues related to her disability. ECF No. 57-13 at 2–3. On May 2, 2019, Ms. Barrow emailed Ms. Richards Smith stating that she had investigated her claim of discrimination and found it to be unsubstantiated. ECF No. 57-3, Richards Smith Dep. 234:4–22.

On May 30, 2019, Ms. Ellmark placed Ms. Richards Smith on a Performance Improvement Plan ("PIP"). ECF No. 57-9. In the PIP, Ms. Ellmark stated that Ms.

Richards Smith had "45 days from the date of this document to show significant and sustained improvement in [her] performance. If [she] fail[ed] to meet the expectations of this PIP, [she would] be subject to discipline up to and including immediate termination of [her] employment." *Id.* at 2. The PIP listed five primary areas of concern: "project deliverables not delivered to time and quality," "communication with colleagues and managers not adequate," "lack of proactivity and independence in project work," "recording of conversation without consent from all parties," and "listening in to sensitive discussions uninvited." *Id.* 3–4. Ms. Ellmark noted specific instances supporting each area of concern and noted that recording conversations without the consent of all parties violates AstraZeneca's Standards of Conduct Policy. *Id.*

In or around June 2019, Ms. Richards Smith requested short-term disability leave based on an increase in depression-related symptoms, which she attributed to stress at work and her pregnancy. ECF No. 57-3, Richards Smith Dep. 405:10–406:3. She began her short-term disability leave while her request was under review. *Id.* 330:10–14. The request for short-term disability leave was denied and, therefore, was unpaid from June 2019 until shortly after her daughter's birth. *Id.* 274:3–9, 406:4–8.

On or around December 23, 2019, Ms. Richards Smith returned to work. ECF No. 1 ¶ 56, ECF No. 11 ¶ 56; ECF No. 57-4, Declaration of Sara Ellmark ("Ellmark Decl.") ¶ 16. Her PIP had been suspended during her leave of absence and was reinstated on January 14, 2020. ECF No. 57-4, Ellmark Decl. ¶ 16; ECF No. 57-10 at 3–11. Much of the reinstated PIP replicated the May 2019 one, including the 45-day deadline for Ms. Richards Smith to improve her performance; however, in addition to the two policy violations previously listed, an additional area of concern was added in the reinstated

PIP for "personal use of company credit card," which was alleged to have occurred in October and November 2019 after the initial PIP. ECF No. 57-10 at 3–11.

On March 11, 2020, fifty-seven days after the PIP was reinstated, Ms. Ellmark provided Ms. Richards Smith with an updated version of the PIP that noted Ms. Richards Smith's failure to fully meet assignment requirements, ECF No. 57-10 at 7, failure to provide weekly plans, *id.*, failure to provide a summary or updates of work completed, *id.* at 9, 10, frequently appearing as offline on Skype or having most of her calendar blocked off despite only being assigned one project, *id.* at 9–10, incorrect information included in assignments, *id.* at 11, and various other deficiencies. Accordingly, AstraZeneca terminated Ms. Richards Smith's employment on March 11, 2020. *Id.* at 2, 12; ECF No. 57-3, Richards Smith Dep. 337:18–19.

This Court granted AstraZeneca's motion for summary judgment on all counts. *Richards Smith*, 2026 WL 741599, at *6–8. Based on the statute of limitations, summary judgment was granted to AstraZeneca on the discrimination claim as a whole and the retaliation claim to the extent it was based on the PIP. *Id.* at *6. As to Plaintiff's retaliation claim related to her termination, summary judgment was granted to AstraZeneca based on Ms. Richards Smith's failure to prove causation in order to establish a prima facie case for retaliation. *Id.* at *6–7. In coming to that conclusion, the Court explained the law and facts regarding the temporal proximity theory of causation and stated that "[g]iven that temporal proximity is the only basis for which Ms. Richards Smith alleges that a causal connection is established, Ms. Richards Smith has not met her burden of establishing a prima facie case for retaliation." *Id.* at *7 (citing ECF No. 1 ¶ 89) (internal citation omitted). In her complaint, the only basis that Ms. Richards Smith

asserts for causation is "[t]he proximity of Ms. Richards[ ]Smith's protected activities and her termination by the Defendant[]." ECF No. 1 ¶ 89.

Ms. Richards Smith has filed a motion to alter or amend the judgment, seeking only to amend the judgment as to her retaliation claim based on her termination. ECF No. 71. She contends that her "opposition [to the motion for summary judgment] did not rely on temporal proximity alone" and that she "expressly argued that causation could be established through the broader sequence of retaliatory conduct, through surrounding circumstances showing Defendant was building a justification to remove her, and through evidence that Defendant's stated reasons were weak, inconsistent, and pretextual." *Id.* at 3–4 (citing ECF No. 64 at 17–20).

AstraZeneca filed a response brief, arguing that "the Court was correct in finding that Plaintiff based her causation argument solely on temporal proximity" because her "purported 'sequence-of-events argument' was contained in a section of her brief titled 'Timing Strongly Suggests Retaliation or Discriminatory Motive[]' . . . [a]nd her argument amounted to the contention that the *timing* of a sequence of events" was the primary issue. ECF No. 72 at 4. It further argues that, even if she had properly argued a "sequence-of-events" theory of causation, that argument fails. *Id.* at 5. Finally, it contends that Ms. Richards Smith's arguments based on pretext do not save her claim because the question of pretext becomes relevant only if a plaintiff has made out a prima facie case of retaliation, which the Court held that she failed to do. *Id.* at 5–6. Ms. Richards Smith did not file a reply brief.

## II. STANDARD OF REVIEW

Rule 59(e) allows for a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). "It is an extraordinary remedy that should be applied sparingly." *Mayfield v.*

*Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citing *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997)). "A Rule 59(e) motion 'need not be granted unless the district court finds [1] that there has been an intervening change of controlling law, [2] that new evidence has become available, or [3] that there is a need to correct a clear error or prevent manifest injustice.'" *Nicholson v. Durant*, 162 F.4th 417, 422 (4th Cir. 2025) (quoting *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010)). "A court's decision is free from 'clear error' when it is 'factually supported and legally justified.'" *Id.* (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081–82 (4th Cir. 1993)).

## III. DISCUSSION

Ms. Richards Smith's "sequence-of-events" theory of causation fails and therefore does not constitute a basis to alter or amend judgment.[2] Under a "sequence-of-events" theory, "when a Title VII retaliation claimant 'cannot rely on mere temporal proximity' as proof of causation, 'courts may look to the intervening period for other evidence of retaliatory animus.'" *Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir. 2024) (quoting *Lettieri v. Equant Inc.,* 478 F.3d 640, 650 (4th Cir. 2007)). Under this theory, "intervening events can bridge what would otherwise be a prohibitively long temporal gap." *Id.* (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)) (internal quotations omitted). The focus is on conduct that occurred between the protected activity and the adverse employment action. *See Lettieri*, 478 F.3d at 650 (reviewing

[2] Ms. Richards Smith's complaint and opposition to the motion for summary judgment do not appear to clearly present a "sequence-of-events" theory of causation. The portion of the opposition brief that she references discusses the "sequence of events" in the context of the temporal proximity of those events to her termination. ECF No. 64 at 17–18. Because she does cite to (although provides no application of) three "sequence-of-events" theory cases, the Court will evaluate the merits of that theory to her case.

conduct that occurred in the seven-month period between the plaintiff's complaint and her termination); *Holloway*, 32 F.4th at 300 (reviewing conduct that occurred in the three-month period between the final EEO complaint filed and the plaintiff's termination).

In *Barbour*, for example, the allegations that were sufficient at the pleading stage to support an inference of causation included repeated questioning about sexual harassment claims, the reopening of her background check on dubious pretenses, and a failure to promptly and voluntarily notify the plaintiff that her application had been closed. 105 F.4th at 594, 596. And the employer had retaliated at the first opportunity, and there were significant inconsistencies in the employer's treatment of her application. *Id.* at 596. In *Holloway*, a month after the EEO complaint the plaintiff's supervisor exclaimed "that he was aware of [plaintiff]'s EEO complaint against [a coworker] and that [the supervisor] 'would be involved'"; that was sufficient for causation at the pleading stage. 32 F.4th at 300. Finally, in *Lettieri*, the plaintiff's office transfer plan was cancelled within days of her submitting a report for gender discrimination. 478 F.3d at 650–51. Plus, she was stripped of job responsibilities the next month, discussions of her termination began within one or two months, her supervisor began telling people that he had issues with the plaintiff and that her role was no longer needed the following month, the plaintiff was terminated two months later, and the supervisor immediately sought approval for her replacement. *Id.* at 651. The regularity with which these events occurred was sufficient at the summary judgment stage to establish causation. *Id.*

These cases do not diminish AstraZeneca's entitlement to summary judgment. Based on the evidence in the record here, there is no evidence from which a reasonable

factfinder could conclude that Ms. Richards Smith's termination in March 2020 was because of her March 2019 complaint about her 2018 performance evaluation. She asks this Court to consider the sequence of events of (1) her March 2019 complaint being found to be unsubstantiated at the beginning of May 2019 and her then being placed on the PIP at the end of May 2019; (2) her PIP being suspended in June 2019 when she went on leave and being reinstated in January 2020 (about three weeks after she returned to work); and (3) her termination in March 2020. ECF No. 71 at 6. None of these actions indicate that retaliatory animus.

The bases for the PIP were outlined in detail, referencing Ms. Richards Smith's negative performance evaluations as well as policy violations and stated specific actions and goals for her to achieve over the next forty-five days. *Richards Smith*, 2026 WL 741599, at *2–3. Less than a month after the PIP was initiated, Ms. Richards Smith went on leave and AstraZeneca suspended her PIP. Ms. Richards Smith does not, and cannot, contend that AstraZeneca's suspension of her PIP while she was on leave constituted an adverse employment action. Therefore, there is no basis upon which she can assert that the continuation of her *suspended* (not terminated) PIP constitutes a basis for retaliatory animus. Additionally, prior to her termination, AstraZeneca provided a detailed explanation of the bases for the termination, noting additional policy violations that had occurred while Ms. Richards Smith was on leave. *See id.* at *4. Finally, unlike in *Lettieri*, these actions were not regularly occurring or in quick succession to show a causal link between Ms. Richards Smith's complaint and her termination a year later. Considering these events as whole, these actions indicate that AstraZeneca notified Ms. Richards Smith about its concerns regarding her performance, provided her an opportunity to improve her performance, and took action only once Ms. Richards Smith

failed to improve her performance (at least according to her manager) and violated more policies. This is insufficient to establish retaliatory animus in order to assert a "sequence-of-events" theory of causation, and therefore, Ms. Richards Smith has still failed to establish a prima facie case for retaliation.[3]

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's motion to alter or amend judgment will be denied. A separate order follows.

Date: August 18, 2026

***/s/***
Adam B. Abelson
United States District Judge

[3] As the Court explained in its prior ruling, it is only upon a plaintiff establishing a prima facie case of retaliation that the case gets to the burden-shifting step allowing the plaintiff to demonstrate that any purported non-retaliatory reasons were pretextual. *Richards Smith*, 2026 WL 741599, at *6 (citing *Thomas v. City of Annapolis, Md.*, 851 F. App'x 341, 350 (4th Cir. 2021)). Because Ms. Richards Smith fails to establish a prima facie case of retaliation, the Court need not and will not consider her pretextual arguments.